AUSA: John Sarlitto

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TRAVIS TAYLOR<br>a/k/a "Stew,"<br><br>Defendant. | **COMPLAINT**  *25mJ2653*<br><br>Violations of 21 U.S.C. § 841(b)(1)(B); 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i).<br><br>COUNTY OF OFFENSE: WESTCHESTER |

SOUTHERN DISTRICT OF NEW YORK, ss.:

Brandon Amlung, being duly sworn, deposes and says that he is a Task Force Officer with the Federal Bureau of Investigation's ("FBI's") Safe Streets Task Force, and charges as follows:

## COUNT ONE
### (Distribution of Narcotics)

1. On or about August 20, 2025, in the Southern District of New York and elsewhere, TRAVIS TAYLOR, a/k/a "Stew," the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2. The controlled substance involved in the offense was 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 841(b)(1)(B).)

## COUNT TWO
### (Firearm Use, Carrying, and Possession)

3. On or about August 20, 2025, in the Southern District of New York and elsewhere, TRAVIS TAYLOR, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count One of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

## COUNT THREE
### (Possession of a Firearm After a Felony Conviction)

4. On or about August 20, 2025, in the Southern District of New York and elsewhere,

TRAVIS TAYLOR, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a 9mm Taurus PT99 pistol bearing the serial number TJG48182, and the firearm was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.    I am a Task Force Officer with the FBI's Safe Streets Task Force, and I am also a Sergeant with the Westchester County Department of Public Safety ("WCPD"). I have been personally involved in the investigation of this matter. This affidavit is based in part upon my training and experience, my conversations with other law enforcement officers and others, and my examination of correspondence, reports, video footage, audio recordings, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents or recordings and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.    Law enforcement has been investigating TRAVIS TAYLOR, a/k/a "Stew," the defendant, for distributing crack cocaine in and around the Southern District of New York. Based on my participation in that investigation, review of law enforcement reports and records, and discussions with other members of law enforcement, I understand the following, in substance and in part:

a.    On or about May 8, 2025, in the city of Mount Vernon, law enforcement officers arrested an individual ("Individual-1") who was searched and found to be in possession of a quantity of crack cocaine individually packaged in small plastic corner ties. Individual-1 identified his source of supply to law enforcement as an individual known to him as "Stew," who resided at 130 West Fourth Street, a free standing, three-story, multi-family residence in Mount Vernon, New York (the "Residence"). In addition to "Stew's" address, Individual-1 provided law enforcement with a cell phone number that Individual-1 knew to be used by "Stew," and a physical description.

b.    Law enforcement and open-source records show that TAYLOR resides within Apartment 3C of the Residence (the "TAYLOR Residence"), and matched the approximate age, race, and height of "Stew" given by Individual-1.

c.    On or about May 22, 2025, law enforcement officers conducted physical surveillance of the Residence. Over the course of their surveillance, law enforcement observed TAYLOR engage in behavior consistent with narcotics trafficking, including exiting the Residence, briefly meeting with individuals, and then immediately reentering the Residence.

d.    On or about June 19, 2025, law enforcement conducted additional surveillance of the Residence. During surveillance, law enforcement observed an individual ("Individual-2") arrive in front of the Residence on a

2

bicycle, enter, and shortly thereafter exit the Residence. Law enforcement officers subsequently made contact with Individual-2, who attempted to flee. After Individual-2 was taken into custody, law enforcement recovered a quantity of crack cocaine from Individual-2's right shorts pocket.

e.    Later on or about June 19, law enforcement officers observed an unknown male exit the Residence, and enter the rear seat of a parked vehicle with another male ("Individual-3") in the driver's seat. Shortly thereafter, the unknown male exited the vehicle and returned to the Residence, while Individual-3 drove away. Law enforcement subsequently conducted a traffic stop of the vehicle being driven by Individual-3 and recovered a quantity of crack cocaine.

f.    On or about June 26, 2025, law enforcement officers conducted additional physical surveillance of the Residence and observed TAYLOR engage in a hand-to-hand transaction with another individual ("Individual-4") on the Residence's front staircase. Law enforcement officers approached Individual-4 after he departed the Residence on foot, at which point Individual-4 discarded seven small, clear ziplock bags of crack cocaine onto the ground.

7.    On or about August 20, 2025, law enforcement officers conducted a search, pursuant to a warrant, of TRAVIS TAYLOR, a/k/a "Stew," the defendant, and the TAYLOR Residence. Based on my participation in those searches, review of law enforcement reports and records, and discussions with other members of law enforcement, I understand the following, in substance and in part:

a.    At approximately 2:00PM, law enforcement officers stopped TAYLOR at or around the intersection of West Fifth Street and Mundy Lane in Mount Vernon. During a search, law enforcement recovered a quantity of crack cocaine, totaling approximately .5 grams, from TAYLOR's person.

3

b.    During a search of TAYLOR's bedroom in the TAYLOR Residence, law enforcement officers recovered approximately 41 grams of crack cocaine in the bedroom closet. Below is a photograph of the recovered crack cocaine.



c.    During a search of the bedroom, law enforcement officers also identified and recovered a 9mm Taurus PT99 pistol bearing the serial number TJG48182, along with 14 rounds of ammunition, under the bed. Below is a photograph of the recovered firearm and ammunition.



d.    I have learned that a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives has reviewed photographs of the 9mm Taurus PT99 pistol bearing the serial number TJG48182 and concluded, based on his training and experience, that the firearm was manufactured outside of the State of New York.

8.    During a post-arrest interview, TRAVIS TAYLOR, a/k/a "Stew," the defendant, told law enforcement, in substance and in part, that the crack cocaine and firearm recovered from the TAYLOR Residence belonged to him, and that he owned the firearm for "protection."

9.    Criminal history records for TRAVIS TAYLOR, a/k/a "Stew," the defendant, show that he has been convicted of multiple prior felonies, including the following:

4

a.    On or about March 8, 2007, TAYLOR was convicted in Queens County Supreme Court of Attempted Robbery in the second degree in violation of N.Y. PENAL LAW § 160.10. TAYLOR was sentenced to one year imprisonment.

b.    On or about January 20, 2010, TAYLOR was convicted in Queens County Supreme Court of burglary in the first degree in violation of N.Y. PENAL LAW § 140.30. TAYLOR was sentenced to 10 years' imprisonment.

c.    On or about August 15, 2011, TAYLOR, while serving his sentence for his burglary conviction, was convicted in Chemung County Court of attempt to knowingly make/possess dangerous contraband in prison in the first degree in violation of N.Y. PENAL LAW § 205.25. TAYLOR was sentenced to an indeterminate sentence of 18 months to three years' imprisonment.

WHEREFORE, I respectfully request that TRAVIS TAYLOR, a/k/a "Stew," the defendant, be imprisoned or bailed, as the case may be.

BRANDON AMLUNG
TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this 21st day of August, 2025.

THE HONORABLE ANDREW KRAUSE
United States Magistrate Judge
Southern District of New York

5